IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LEO MARTINEZ,                        §
                                     §
        Plaintiff,                   §
                                     §
v.                                   §        CIVIL ACTION NO.
                                     §        3-05-CV-0422-P
NEIMAN MARCUS GROUP, INC.,           §
                                     §
        Defendant.                   §


## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendant Neiman Marcus Group, Inc.'s (hereinafter "Neiman Marcus") Motion for Summary Judgment, filed November 15, 2005. Plaintiff Leo Martinez (hereinafter "Martinez") filed a response on December 5, 2005, and Neiman Marcus replied on December 20, 2005. For the reasons stated below, the Court hereby DENIES Defendant's Motion for Summary Judgment.

### I. Factual and Procedural Background

This case arises out of a dispute as to the reason for Martinez's termination from Neiman Marcus in November of 2004. Martinez was a fifteen year veteran at Neiman Marcus's Distribution Center in Las Colinas, Texas, having started as a warehouseman in 1989 and risen to the position of Returns Supervisor. (Pl.'s App. at 35: Martinez Aff. ¶ 1; Def.'s App. at 157: Hicks Aff. ¶ 4.) He claims that he was terminated in violation of federal law due to his use of Family and Medical Leave Act (hereinafter "FMLA") leave or because of his age. Neiman Marcus, on the other hand, maintains that he was terminated due to his failure to meet heightened expectations of

professionalism and performance.  (Def.'s Brief Support Mot. at 4; Pl.'s Resp. at 5–7.)

The events leading up to Plaintiff's termination began in July of 2004 when Danny Cornish was promoted to the role of Stocking Manager and thereby became Martinez's direct supervisor. (Def.'s App. at 158, 163, 169: Hicks Aff. ¶ 7, Cornish Aff. ¶¶ 2, 4, McKee Aff. ¶ 4.)   Once promoted, Cornish held a series of meetings in which Martinez's future with the company was discussed.  (Pl.'s App. at 15–17: Cornish Dep. 9:14–11:17.)   During these meetings, Cornish recommended that Martinez be terminated. (Pl.'s App. at 16–17: Cornish Dep. 10:21–11:1.) Linda Hicks, the Distribution Center's Human Resources Manager, also participated in these meetings and advocated developing a plan to help Mr. Martinez continue his employment if possible.  (Pl.'s App. at 17: Cornish Dep. 11:2–11:5.)   Ultimately, it was decided that Cornish would conduct an additional performance review before the annual fiscal year end performance review.  (Pl.'s Resp. at 7; Def.'s App. at 137–41.)

This "pre-review" was conducted at the end of July and was generally negative with Martinez receiving a "Needs Improvement" rating in six out of eight categories and no rating higher than "Achieves Expectations."  (Def.'s App. at 138.)   The review contained a list of seven "examples of deficiencies" that needed to be addressed, such as record keeping, overall organization and housekeeping, and reporting on scheduling and disciplinary actions.  (*Id.* at 140.)  It also contained a section entitled Executive Development Plan, which stated that:

> There can no longer be any tolerance of the behavior.  Continuing down this path shows a lack of personal accountability. Leo, the Return Goods team has to be able to count on each member to do their job correctly each and every day or the morale of the team as a whole is destroyed.  Leo, you have a tremendous amount of knowledge of our overall business that you can bring to the management team but the team and I need more attention to detail from you.  Please work toward this goal.

If there is any way I can help you reach your goals, please, feel free to ask.

(*Id.* at 141.)  The review also warned that a second review would be performed in 30 days and that "all [Needs Improvement] ratings must be brought to a rating of [Achieves Expectations]."  (*Id.* at 140.)  The review stated that "[i]n the event that any area does not receive an [Achieves Expectations] rating a probationary period will be instated."  (*Id.*)

Martinez's performance on this review was significantly worse than his performance on past reviews.  For example, in his 2003 review, Martinez received "Achieves Expectations" ratings in six out of eight categories and a "Needs Improvement" rating in only two categories.  (*Id.* at 133.)  The 2003 review stated that he had an "unequivocal attitude," "strong work ethic," and "high level of commitment."  (*Id.*)  The review's executive summary stated that "Leo has the potential to be a very good supervisor," which he demonstrated "again this year with a 20% improvement in his error rate."  (*Id.* at 134.) In addition, the 2003 review contained a handwritten note, which read "Leo, Thanks for a good year!!!"  (*Id.*)  On his 2002 review, Martinez received an "Achieves Expectations" rating in five out of seven categories and a "Exceeds Expectations" rating in the remaining two.  (*Id.* at 130.)

On August 8, 2004, based on the negative "pre-review," Martinez was placed on probation for ninety days.  (Def.'s App. at 154, 159, 166, 170: Hicks Aff. ¶ 11, Cornish Aff. ¶¶ 12, 4, McKee Aff. ¶ 8.)  Three days later, he received a memorandum from Cornish listing the "developmental opportunities" set forth in the July review.  (Def.'s App. at 142.)  This memo concluded as follows:

> These are issues that cannot continue.  As we discussed in your recent performance review there are specific expectations and tasks to be accomplished in your role as a supervisor.  Any failure to meet these requirements will result in further disciplinary action including possible termination.

(*Id.*)  On September 7, 2004, Martinez received a second memorandum from Cornish detailing his progress in achieving the developmental opportunities.  (*Id.* at 144.)  This memo indicates that at that point Martinez had made progress in achieving his expectations:

> In general, some very important strides have been taken to improve the above issues. However, you are required to maintain these changes and you must continue to focus and follow up on all issues.

(*Id.* at 145.)  However, the memo also repeated the earlier warning regarding possible further disciplinary action.  (*Id.*)

A third memorandum from Cornish was received on October 18, 2004, indicating that Martinez had failed to make further progress and that additional concerns had been raised.  (*Id.* at 154.)  The memo stated in part:

> There has not been consistent significant improvement in the overall below issues since the last review.  In addition, several scheduled meetings have been missed. Follow up on the below issues has not been done to ensure completion.  You are required to maintain these expectations and tasks as a DC Supervisor.

(*Id.*)  The memo also closed with a heightened warning:

> You will be evaluated in the next 30 days.  At that time, Neiman Marcus will decide whether to continue your employment.  If your performance has not improved to meet expectations at the end of the probationary period, your employment will be terminated.  If during the next 30 days you fail to meet performance expectations, your employment may be terminated at any time. . . .

(*Id.* at 155.)

As these evaluations were being performed, Martinez continued to suffer from ongoing health problems, including anxiety attacks, chest pains, dizziness, headaches, shortness of breath, and stress. (Def.'s App. at 180, 183, 185–86: Martinez Dep. 33:10–12, 34:18–19, 45:13–46:4, 47:8, 48:4–8, 55:13–19, 58:18–20; Pl.'s App. at 14, 18, 20: Cornish Dep. 5:12–14, 12:16–22, 14:19.) On

November 1, 2004, he fell ill at work, and an ambulance was summoned on his behalf.  (Pl.'s App. at 36: Martinez Aff. ¶ 4.)  He was taken to the emergency room where he received medical treatment and was allegedly referred to other healthcare providers for additional treatment.  (Pl.'s App. at 36, 48–51: Martinez Aff. ¶ 4.)  This was the fourth or fifth time in two years that emergency medical personnel had been called to Neiman Marcus due to his health problems.  (Def.'s App. at 185: Martinez Dep. 55:1–11.)

Martinez missed work from Tuesday, November 2, until Friday, November 5.  (Pl.'s App. at 36: Martinez Aff. ¶ 5.)  While he was out, he received a phone call from Cornish during which the two discussed Martinez's health condition and treatment.  (Pl.'s App. at 36: Martinez Aff. ¶ 5.)  Upon his return, he provided Ms. Hicks with a document informing her of his trip to the hospital.  (Def.'s App. at 160: Hicks Aff. ¶ 20.)  He also told her that he had been having chest pains.  (*Id.*)

His probation period was set to expire on Sunday, November 7, but Neiman Marcus alleges that it was extended for one week to accommodate the days he missed work due to illness.  (Def.'s App. at 159: Hicks Aff. ¶ 17.)  He returned to work on Monday, November 8, and was terminated later that week on Friday, November 12.   (Pl.'s App. at 35–36: Martinez Aff. ¶¶ 2, 5.)

At the time of his termination, Martinez was fifty years of age.  (Pl.'s App. at 37: Martinez Aff. ¶ 11.)  He was replaced by Alisha Singleton, who is forty-one years old.  (Pl.'s App. at 24.5: Cornish Dep. 26:17–22.)

Martinez filed a charge of discrimination with the EEOC on December 1, 2004, and the EEOC issued a Dismissal and Notice of Rights the very next day.  (Compl. Ex. A at 1–2.)  Martinez filed his complaint in this Court on March 2, 2005, and Neiman Marcus answered on April 11, 2005.

The parties have completed discovery, and Neiman Marcus now moves for summary judgment arguing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.

## II. Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such an absence.  *Celotex*, 477 U.S. at 323.  However, all evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  At this point, the nonmovant must provide specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment.  *Id.* at 248–50; *Abbott v. Equity Group*, 2 F.3d 613, 619 (5th Cir. 1993).  In other words, conclusory statements, speculation, and unsubstantiated assertions will

not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case and on which he bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988). Finally, the Court has no duty to search the record for triable issues. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### III. Analysis

Neiman Marcus argues that it is entitled to summary judgment on both Martinez's FMLA claim and his claim based on the Age Discrimination in Employment Act (hereinafter "ADEA"). The Court examines each claim in turn and ultimately finds that summary judgment is inappropriate as to both.

### a. Family and Medical Leave Act

"The FMLA was enacted in 1993, in part, to provide job security for employees with 'serious health conditions that prevent them from working for temporary periods.'" *Urban v. Dolgencorp of Tex., Inc.*, 393 F.3d 572, 574 (5th Cir. 2004) (quoting 29 U.S.C. § 2601(a)(4)). The Act seeks "to balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers . . . ." 29 U.S.C.A. § 2601(b)(1)–(3) (West 1999).

Under the FMLA, an eligible employee is entitled to a total of twelve workweeks of leave during any twelve-month period if such leave is necessary, inter alia, "[b]ecause of a serious health

condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.A. § 2612(a)(1)(D); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 302 (5th Cir. 1999). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act and also "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the Act. 29 U.S.C.A. § 2615(a)(1)–(2).

Martinez claims that Neiman Marcus violated the FMLA by retaliating against him for taking FMLA leave. (Compl. ¶ 17.) "The Fifth Circuit applies the *McDonnell Douglas* framework to analyze retaliation claims under the FMLA, noting that 'there is no significant difference between such claims under the FMLA and similar claims under other anti-discrimination laws.'" *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 768 (5th Cir. 2001) (quoting *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999)).

### 1. Prima Facie Case

In order to establish a prima facie case of discrimination under the FMLA, the plaintiff must show that: "(1) she engaged in a protected activity; (2) the employer discharged her; and (3) there is a causal connection between the protected activity and the discharge." *Chaffin*, 179 F.3d at 319. Martinez claims that the first element of his prima facie case is satisfied because he took FMLA leave during the first week of November 2004. (Pl.'s Resp. at 6.) Neiman Marcus argues that he was ineligible for FMLA leave because he did not have a "serious health condition" and he was able to perform his job functions. (Def.'s Brief Support Mot. at 16, 20.)

A "serious health condition" is defined in relevant part as "an illness, injury, impairment, or

physical or mental condition that involves . . . continuing treatment by a health care provider ." 29 U.S.C.A. § 2611(11).  A serious condition involving continuing treatment by a health care provider includes "any period of incapacity or treatment for such incapacity due to a chronic serious health condition," including examinations to determine whether a serious health condition exists.  29 C.F.R. §§ 825.114(a)(2)(iii), (b).  A condition that continues over an extended period of time or that causes episodic periods of incapacity qualifies as a chronic serious health condition. 29 C.F.R. §§ 825.114(a)(2)(iii)(B), (C).  The record indicates that over a prolonged period of time Martinez suffered from ongoing health problems that included anxiety attacks, chest pains, dizziness, headaches, shortness of breath, and stress.  (Def.'s App. at 180, 183, 185–86: Martinez Dep. 33:10–12, 34:18–19, 45:13–46:4, 47:8, 48:4–8, 55:13–19, 58:18–20; Pl.'s App. at 14, 18, 20: Cornish Dep. 5:12–14, 12:16–22, 14:19)  His symptoms were so severe that on multiple occasions emergency medical personnel were summoned to Neiman Marcus on his behalf and he left work to go to the emergency room.  (Def.'s App. at 180, 185: Martinez Dep. 33:17–19, 55:4–6.)  There is thus some evidence that he suffered from a "serious health condition."

Furthermore, the record indicates that Martinez's health condition may have affected his ability to work.  Under the regulations, "[a]n employee who must be absent from work to receive medical treatment for a serious health condition is considered to be unable to perform the essential functions of the position during the absence for treatment."  29 C.F.R. § 825.115.  Martinez has submitted medical billing records showing that he received emergency medical treatment during the first week of November 2004.  (Pl.'s App. at 48–51.)  In addition, he has testified that as a result of his condition he was not able to do his job during that week.  (Pl.'s App. at 10: Martinez Dep.

207:21–23.)  Based on the summary judgment evidence before it, the Court concludes that a reasonable jury could find that Plaintiff qualifies for FMLA leave because a serious health condition rendered him unable to perform the essential functions of his position.

The Court also finds that there is a fact issue as to whether a causal connection exists between Martinez's use of FMLA leave, if any, and his termination.  "[T]he 'causal link' required in prong three of the prima facie case for retaliation is not as stringent as the 'but for' standard." *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001).  In fact, in order to establish a prima facie case,  "a plaintiff need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a prima facie case." *Long v. Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996).  "[T]iming can sometimes be a relevant factor in determining whether a causal connection exists where the timing between a protected activity and an adverse employment action is 'suspicious[ly]' proximate."  *Fabela v. Soccoro Indep. Sch. Dist.*, 329 F.3d 409, 418 n.9 (5th Cir. 2004) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir.1999)).

In this case, the evidence indicates that Plaintiff took several days of medical leave during the Fall of 2004.  Plaintiff "missed a day or two" in July of 2004, and four days in November. (Def.'s App. at 222: Martinez Dep. 204:2; Pl.'s App. at 36: Martinez Aff. ¶ 5.)  Within a month of returning to work in July, he was placed on probationary status.  Within a few days of returning to work in November, he was terminated from the company.  When viewed in the light most favorable to the plaintiff, this evidence creates a fact issue as to whether a causal connection exists between Plaintiff's use of FMLA leave, if any, and his termination.

Based on the analysis above, the Court finds that Plaintiff has established a *prima facie* case of retaliation under the FMLA.

## 2. Legitimate, Nondiscriminatory Reason

Once the plaintiff establishes a prima facie case, "the employer must articulate a legitimate, nondiscriminatory reason for the plaintiff's termination." *Chaffin*, 179 F.3d at 319–20. "If the employer carries this burden of production, the presumption raised by the prima facie case is rebutted." *Id.* at 320.

In the instant case, Neiman Marcus maintains that Martinez was terminated because he "failed to meet the heightened performance and professionalism standards put into place with the arrival of Senior Vice President Greg Shields in 2003 . . . ." (Def.'s Brief Support Mot. at 28.) Towards this end, Neiman Marcus points to the negative performance evaluation received in July of 2004 that resulted in Martinez being placed on probation on August 8, 2004. (*Id.* at 28–29.) Neiman Marcus also notes that Martinez received written progress reports on September 7, 2004, and October 18, 2004, both of which indicate that some progress had been made but that further changes were required to avoid additional disciplinary action. (*Id.* at 13, 28.) In an affidavit, David McKee, Neiman Marcus's Vice President of Fulfillment/Operations, testifies that "heightened standards of performance and professionalism had been put in place by Greg Shields upon his arrival at the Distribution Center in the fall of 2003" and that "Mr. Martinez failed to live up to these new expectations and performance standards." (Def.'s App. at 170: McKee Aff. ¶¶ 4, 6.) Danny Cornish, Martinez's direct supervisor during the period leading up to his termination, testifies to the same effect in his affidavit. (Def.'s App. at 163: Cornish Aff. ¶ 5.) Through this evidence, Neiman

Marcus has met its burden of articulating a legitimate, nondiscriminatory reason for Plaintiff's termination.

### 3.  Pretext

Because Neiman Marcus has carried its burden of articulating a legitimate, nondiscriminatory reason for its actions, Martinez must show that its proffered reason is merely a pretext for discrimination in order to survive summary judgment.  As discussed further below, the Court finds that Martinez successfully shoulders this burden.

To demonstrate pretext, Plaintiff must present evidence to rebut each of the non-discriminatory reasons that Defendant articulates.  *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001).  If "the evidence of pretext is substantial, the plaintiff may create a genuine issue of material fact without independent evidence that discrimination was the real reason for the adverse employment action."  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (citation omitted); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 148 (2000).[1]  This is because a plaintiff's prima facie case, along with sufficient evidence that the employer's proffered reason is false, may permit a factfinder to infer that the employer intentionally discriminated.  *Reeves*, 530 U.S. at 148.

Such a showing will not prevent summary judgment in every case, however, because in some cases "although [a] plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was

---

[1]  Defendant's briefing suggests that summary judgment is appropriate because Plaintiff has failed to show that the employer's articulated reason is false *and* that his use of FMLA leave was the true reason for the employer's action.  However, the Supreme Court has explicitly rejected the theory that "pretext plus" is required to support an inference of retaliatory discrimination.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141–49 (2000).

discriminatory." *Id.*; *see also Price v. Fed. Express Corp*, 283 F.3d 715, 720 (5th Cir. 2002).  The fact "that the employer's proffered reason is unpersuasive . . . does not necessarily establish that the plaintiff's proffered reason is correct." *Hicks*, 509 U.S. at 524.  To find in favor of the plaintiff, it "is not enough [for the factfinder] . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 519 (emphasis in original).  The ultimate burden of persuasion rests squarely on the plaintiff. *Reeves*, 530 U.S. at 143.  As such, courts may consider a number of factors in deciding whether summary judgment is appropriate, including "the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case." *Id.* at 148–49.  Summary judgment may be particularly appropriate where "the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination . . . occurred" *or* where "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision." *Id.* at 148.

In the instant case, Defendant's Motion for Summary Judgment relies primarily on documentary evidence generated after the promotion of Danny Cornish in July of 2004.  Plaintiff, however, points out numerous reasons to doubt the accuracy of this evidence.  For example, Cornish testified at his deposition that he recommended terminating Martinez shortly after he assumed his new position.  (Pl.'s App. at 16–17: Cornish Dep. 10:21–11:1.)  However, his deposition testimony contains no indication of the basis of this initial recommendation.  Defendant claims that Cornish's recommendation was based on performance concerns, however, there is very little evidence in the record of deficient performance before July of 2004.  Martinez's performance review for fiscal year

2003, the last performance review conducted before Cornish's promotion, was generally favorable, as were Martinez's other performance reviews during his fifteen year career at Neiman Marcus. (Def.'s App. at 93–153.)   Furthermore, there is scarce evidence of misconduct or deficient performance from the time the 2003 review was conducted through July 2004.  The only documented incident of misconduct occurred in May 2004 when Plaintiff fell asleep at his desk, however, Defendant does not suggest that this incident was a substantial factor in his termination.  (*Id.* at 135–36.)  Defendant also notes that there were two other incidents where Plaintiff displayed "inappropriate and unprofessional behavior" by "testing" returned merchandise.  (Def.'s Brief Support Mot. at 5.)  However, it is unclear whether either "testing" incident was very serious, as apparently neither resulted in a write-up or other disciplinary activity.  In short, Defendant has failed to present substantial evidence of performance deficiencies before July of 2004.  Absent such evidence, the Court concludes that it is reasonable for a factfinder to question the motivation behind Cornish's actions in July of 2004.

This uncertainty regarding Cornish's motives also draws into question the reliability of the "pre-review" upon which Defendant places great reliance.  As mentioned above, Martinez's performance on this "pre-review" was significantly worse than his performance on prior reviews, including the review conducted just eleven months before.  On the 2003 fiscal year end review, Martinez received an "Achieves Expectations" rating in six out of eight categories and a "Needs Improvement" rating in only two categories.  (Def.'s App. at 133.)  In addition, the review contained a handwritten note, which read "Leo, Thanks for a good year!!!"  (*Id.*)  This review was generally consistent with the other performance reviews conducted during Martinez's fifteen year tenure at

Neiman Marcus.  Yet his performance on the July 2004 "pre-review" plummeted, as he received a "Needs Improvement" rating in six out of eight categories and an "Achieves Expectations" rating in the remaining two.  (*Id.* at 138.)  Taking into consideration the lack of substantial evidence of performance deficiencies before July of 2004, it is reasonable for the factfinder to doubt the accuracy of this "pre-review."

Neiman Marcus's proffered rationale is further called into question by Cornish's own testimony.  At his deposition, Cornish was asked whether his expectations were higher than his predecessor's.  (Pl.'s App. at 15: Cornish Dep. 9:11–12.)  His response was that both of their expectations were "at the same level."  (Pl.'s App. at 15: Cornish Dep. 9:13.)

Viewing the summary judgment evidence in the light most favorable to the non-movant, the Court finds that a fact issue exists as to whether Neiman Marcus's proffered rationale for its employment decision was the true reason for its actions.  Based on the strength of the evidence of pretext, the Court concludes that Plaintiff has successfully established a genuine issue of material fact as to whether he was terminated for his use of FMLA leave in violation of federal law.

### b. Age Discrimination in Employment Act

Martinez also claims that he was terminated in violation of the ADEA.  (Compl. ¶ 13.) "Under the ADEA, it is unlawful for an employer 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'"  *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349–50 (5th Cir. 2005) (quoting 29 U.S.C. § 623(a)(1)).  The same three-step *McDonnell Douglas* burden shifting scheme utilized above applies to Martinez's claim based

on the ADEA. *Patrick v. Ridge*, 394 F.3d 311, 315 n.10 (5th Cir. 2004). In order to establish a prima

facie case of discrimination in violation of the ADEA, "[t]he plaintiff must prove that: 1) he was

discharged; 2) he was qualified for his position; 3) he was within the protected class; and 4) he was

replaced by someone outside the protected class, someone younger, or was otherwise discharged

because of his age." *Davis v. CSC Logic, Inc.*, 82 F.3d 651, 654 (5th Cir. 1996).

Here, the only element of the prima facie case in dispute is the second element. (Def.'s Brief

Support Mot. at 31–32.) Neiman Marcus argues that Martinez was unqualified for his position due

to his performance deficiencies. However, the Court's finding that there is a genuine issue of fact

as to Neiman Marcus's alleged performance concerns also puts this issue in dispute. As such, the

Court concludes that Martinez has established a prima facie case of discrimination based on age. In

addition, the Court's finding as to pretext is equally applicable to Plaintiff's claim based on the

ADEA. As such, Martinez has successfully established a genuine issue of material fact as to whether

he was terminated due to his age in violation of the ADEA.

## Conclusion

Having examined the parties' briefing, the summary judgment evidence, and the applicable

law, the Court hereby DENIES Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Signed this 25th day of January 2006.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

**Memorandum Opinion and Order**
**No. 3-05-CV-0422-P**
**Page 16 of 16**